# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOUIS LA BELLA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 10 C 3906 |
| CHICAGO NEWSPAPER PUBLISHERS DRIVERS UNION PENSION PLAN, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Louis La Bella has filed a *pro se* lawsuit against the Chicago Newspaper Publishers Drivers Union Pension Plan *pro se*, asserting a claim under the Employee Retirement Income Security Act (ERISA). The Plan has moved for summary judgment. For the reasons stated below, the Court grants the Plan's motion.

## Background

La Bella began working for the Chicago Tribune in 1947 as a truck driver. He was a member of the Chicago Newspaper Publishers Drivers Union. He voluntarily left his job and the union sometime between 1963 and 1965 to start his own business. Between 1968 and 1970 he was again a member of the union, working for a newspaper that the parties refer to interchangeably as Chicago Today or Chicago American Publishing Company. La Bella voluntarily left that job in 1970 but began working for the Chicago Tribune again in 1973. He worked at the Tribune and was a member of the union until he retired in 1991.

As a member of the union, La Bella participated in the pension plan and was eligible for a pension the value of which depended on the amount of time he had worked in the newspaper industry and was represented by the union. In response to a request from La Bella's attorney in connection with his divorce, the plan wrote letters in 1986 and 1987 indicating that it was calculating the value of La Bella's pension by including only his years of service since he had resumed working for the Tribune in 1973. La Bella applied for a pension in October 1990. He received a response from the plan indicating that his pension would be determined based upon the time he had worked for the Tribune starting in 1973. The letter stated:

> While you had previous years of credited benefit service from 1957 to 1973, during that period of time there were six of those years in which you had no credited service. These breaks in service resulted in the loss of any credited benefit service prior to your most recent period of employment beginning in 1973 with Chicago Tribune Company.

Def. Ex. M.

La Bella began receiving pension benefits on August 1, 1991. He received credit for seventeen years and seven months of service and his pension benefit was $738.53 per month. If he had received credit for all of the years that he was a member of the union, disregarding the breaks in his service, his pension benefit would have been $1,050 per month.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In other words, a court may grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

La Bella contends that he is entitled to greater pension benefits because the plan should have credited all of the years he worked as a member of the union. The plan argues that La Bella failed to exhaust internal plan appeals, the suit is barred by the statute of limitations, and on the merits La Bella is not entitled to a greater pension. The Court finds that the plan administrators' determination of La Bella's pension was not arbitrary and capricious and therefore does not address the exhaustion and statute of limitations arguments.

The plan in effect at the time La Bella retired in 1991 was the plan as amended in 1987. Def. Ex. C. La Bella contends that the plan was amended in 1989 as well and provides a document he asserts is the 1989 version. Pl. Ex. A. That document, however, is a summary plan description that expressly states that it describes the 1987 plan and that if there is a conflict between the summary and the 1987 plan, the plan language controls. *Id.* at 1–2.

The 1987 plan gives the plan trustees the discretion "to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits." Def. Ex. C § 7.10(a). Given this language, the plan administrators' determination regarding La Bella's pension will be upheld unless it was arbitrary and capricious. *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100

F.3d 62, 67–68 (7th Cir. 1996); *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "This means that the trustees' decision stands so long as it is based on a reasonable interpretation of the plan's language and the evidence in the case." *Daill*, 100 F.3d at 67–68.

It is undisputed that La Bella did not work in the union during 1972 and thus did not participate in the plan during that year. Furthermore, no reasonable fact finder could find that La Bella worked in the union in 1971. La Bella's statement of facts and affidavit state that he worked for Chicago American Publishing Company "from 1968 to 1971." Pl. Statement of Facts ¶ 2; La Bella Aff. ¶ 2. In response to the plan's statement of facts, however, La Bella admitted that he left that job in 1970. Pl. Resp. to Def. Statement of Facts ¶ 23. Additionally, the handwritten document that La Bella refers to as the plan's record of his work history, on which he relies for all of his assertions about the periods in which he worked, indicates that he did not work a single shift as a member of the union in 1971 or 1972. Pl. Ex. B. A reasonable fact finder would have to conclude that La Bella had a two-year break in which he did not work as a member of the union.

Under the plan in effect in 1971–72, which was first created in 1958 and not amended until 1976, a plan "Participant who works less than 74 straight time shifts during a calendar year shall forfeit all credited service . . . and thereafter for all purposes under this Plan he shall be considered a new Participant." Def. Ex. B § 7.3; *see* Def. Exs. G, T. The plan provided exceptions if the break in service was an approved leave of absence or caused by military service, sickness, injury, or lay off. *Id.* La Bella does not contend that his 1971–72 service gap was caused by any circumstances that would

4

entitle him to an exception to the general rule set out by the plan. The plan administrators applied the 1958 plan and determined that La Bella had lost all credit for his work before 1973 due to the gaps in his service. Def. Exs. E, G; *see* Def. Ex. R (stating that plan participant who leaves and returns has service time calculated at the time of return).

La Bella contends that his service time should have been calculated under the version of the pension plan in effect at the time of retirement, which as discussed above is the 1987 version. The 1987 plan included a more lenient rule under which no employee lost previous service credit unless he had worked in the union for less than ten years before his service interruption and the interruption was more than ten years long. Def. Ex. C §§ 1.1(g), 2.3. The plan administrators, however, determined that the provisions of the plan in effect at the time of the break in service governed, interpreted the language of the 1958 plan, and concluded that La Bella forfeited his previous service time when he failed to work seventy-four shifts in either 1971 or 1972. It was reasonable for the administrators to conclude that the provisions of a new plan that was not adopted until fifteen years after the forfeiture did not affect La Bella's loss of service time.

In an affidavit, La Bella states that he was a member of the union "from 1947 to 1965. Per Union Bylaws, I was fully vested in the Union's pension plan after ten (10) years." La Bella Aff. ¶ 1. La Bella has not, however, provided the bylaws that he contends vested him at that time. The 1958 version of the plan, in effect in 1965, does not refer to vesting at all. It does state that once a plan member is eligible for retirement with pension, nothing can alter that eligibility. Def. Ex. B § 6.3. Eligibility for retirement,

5

however, required a participant to be at least sixty-five years old and have twenty-five years of service. *Id.* In 1965, La Bella was not sixty-five, and he had only eighteen years of service. Def. Ex. K. La Bella's vesting argument appears to refer to the break in service provision of the 1987 plan, a plan that was not in effect when he had his service interruption in 1971–72.

La Bella contends that the forfeiture of his years of service prior to 1971 violates the provisions of ERISA. ERISA generally requires that all of an employee's years of service be counted when determining what pension benefits the employee has accrued and whether the benefits are vested. 29 U.S.C. §§ 1052(b)(1), 1053(b)(1) & 1054(b); *see McClain v. Retail Food Emp'rs Joint Pension Plan*, 413 F.3d 582, 585 (7th Cir. 2005). The statute, however, contains an exception that applies when determining if pension benefits are vested. A plan may disregard "years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date". 29 U.S.C. § 1053(b)(1)(F); *McClain*, 413 F.3d at 585. The relevant part of ERISA began to apply to preexisting pension plans after December 31, 1975. *See* 29 U.S.C. § 1061(b)(2); *Jones v. UOP*, 16 F.3d 141, 143 (7th Cir. 1994). Thus, if a plan as it existed in 1975 excluded some of an employee's years of service, the plan may continue to disregard that employee's service today.

The Seventh Circuit has also held that the same sort of exception applies to the years of service that must be counted when determining the pension benefits that have accrued, even though the ERISA provision addressing accrual does not contain an express exception. *McClain*, 413 F.3d at 585–86; *Jones*, 16 F.3d at 143–44. La Bella

notes that other circuits have decided this issue differently and have held that for the purpose of determining what benefits have accrued, plans must count all of an employee's years of service. *DiGiacomo v. Teamsters Pension Trust Fund*, 420 F.3d 220, 225 (3d Cir. 2005); *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 159 (2d Cir. 2003). The Court, however, is bound by the Seventh Circuit's holding that a pension plan can disregard service time if the version of the plan in existence at the time ERISA became applicable did so.

For this reason, ERISA permits the plan to discount years of service for vesting purposes if they were disregarded by the 1958 version of the plan, which was in effect at the time that ERISA began to apply to the plan in 1976. As discussed above, the 1958 plan clearly disregards all of La Bella's service that occurred before his 1971–72 service interruption. The plan is permitted to disregard those earlier years when determining the size of his pension benefit. *See McClain*, 413 F.3d at 587 (ERISA did not alter plan rule that 1973 break in service caused loss of earlier service time); *Jones*, 16 F.3d at 142–44 (ERISA did not alter plan rule that employee forfeited credit for years of service before break in service).

La Bella contends that the plan administrators' decision is nevertheless arbitrary and capricious because another union member, Buford Carlton, received a full pension despite having breaks in service. The parties have presented documentary evidence relating to Carlton's work history. Def. Ex. W; Pl. Ex. C. The documents do not show a break in service (although they do show that in 1972 Carlton worked only ninety-two shifts and thus nearly had a break in service), but they are incomplete. *Id.* The only evidence of a break in service for Carlton is an affidavit made by La Bella, in which he

7

states:

> Records provided by the Pension Plan are incomplete and do not show what Mr. Carlton's employment was or the number of shifts Mr. Carlton worked from 1965[ ]to 1971 and from 1976 to 1983. It is in this time period 1965 to 1983 that I, Louis La Bella, recall Mr. Carlton having a break(s) in service that were not related to Mr. Carlton's military service. The Board awarded Mr. Carlton a pension based upon the years 1950 through June of 1991.

La Bella Aff. ¶ 8. An affidavit from the plan's current manager, William Coli, states that Carlton did not work between 1951 and 1953 because he was performing military service, an exception to the break in service rule, and had no other service interruption while working in the union. Coli Supp. Aff. ¶¶ 3–6.

La Bella's statement in his affidavit lacks foundation and is thus not admissible evidence capable of creating a genuine factual dispute surrounding whether Carlton had a break in service. Fed. R. Civ. P. 56(c)(1), (2), (4); *see Broaddus v. Shields*, 665 F.3d 846, 856 (7th Cir. 2012) ("We have repeatedly held that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). La Bella does not indicate how he knew of Carlton's breaks in service, particularly given that he did not work as a member of the union in some of the years that he asserts Carlton's breaks occurred. La Bella does not state how many breaks in service he believes Carlton had, how long they were, or when they occurred in an eighteen-year period. By contrast, Coli's affidavit provides documentary evidence to support the claim that Carlton had only one service interruption, for his service in the military. Def. Ex. W.

Furthermore, even if La Bella's affidavit could allow a reasonable trier of fact to conclude that Carlton had a break in service sometime between 1965 and 1983, the legal effect on a gap in service would not be the same for all times in that span. A new

version of the pension plan was adopted in 1976, and, because the parties have not included a copy of the 1976 plan, there is no indication whether the treatment of service gaps was the same under that plan as under the 1958 plan. If service interruptions were handled differently under the 1976 plan, as they were in the 1987 plan, differential treatment of Carlton and La Bella would not be arbitrary or capricious even if they both had service interruptions as long as Carlton's occurred after 1976.

In sum, regardless of what pension plan administrators decided regarding Carlton, their interpretation of the plan language and the evidence with regard to La Bella was reasonable and not arbitrary and capricious for the reasons discussed above.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 49] and directs the Clerk to enter judgment in favor of defendant.

_____
MATTHEW F. KENNELLY
Date: July 9, 2012United States District Judge